IRVING, P.J.,
dissenting:
¶ 22. Buchanan was indicted and tried for aggravated assault on a peace officer. At the conclusion of the evidence, the trial court gave three jury instructions: one for aggravated assault on a peace officer; and two for simple assault, one for simple assault on a peace officer and one for “the lesser charge of [mjisdemeanor [sjimple [ajssault.” The victim identified in the indictment and in each instruction is Officer Podlin. It is undisputed that at the time of the alleged assault, Officer Podlin was acting in his capacity as a Gulfport, Mississippi police officer and was wearing clothing that identified him as such. Buchanan objected to the giving of any instructions on simple assault but argued that if the trial court was going to grant one, it should grant only the instruction on “misdemeanor simple assault.” The State argued that it was entitled to both simple-assault instructions. As stated, the trial court granted both instructions.
¶23. The jury found Buchanan not guilty of aggravated assault on a peace officer and not guilty of simple assault on a peace officer. However, it found him *820 guilty of “[m]isdemeanor [simple] [assault.” [6]
¶ 24. The majority finds no error with the trial court’s granting of the instruction on simple assault on a peace officer, along with the instruction on “misdemeanor simple assault.” I disagree; therefore, I dissent. I would reverse and render Buchanan’s conviction for “misdemeanor simple assault” for three reasons. First, he was found not guilty of simple assault on a peace officer which is the lesser-included offense of the crime of aggravated assault on a peace officer. Second, there is no evidentiary basis in the record to support the giving of the “misdemeanor simple assault” jury instruction (Instruction 5-A) which is set forth later in this opinion. Third, “misdemeanor simple assault” on Officer Podlin as a private citizen is not a lesser-included offense of the crime charged in the indictment.[7] However, before I delve into the discussion of the propriety of the granting of both instructions, it is necessary that I relate some facts in context, as they unfolded on the night of the incident.
¶ 25. Around 11:80 p.m. on July 5, 2007, Officers Brandt, Podlin, and West of the Gulfport Police Department were transporting two prisoners to jail. They were traveling north on U.S. Highway 49 and were riding in a Chevrolet Tahoe that was marked only by blue lights on the dashboard; in other words, it did not contain the normal police light bar on the top or any insignia on the outside of the vehicle. As they approached the intersection of U.S. Highway 49 and Middle Drive, they noticed a man, later identified as Buchanan, standing on the curb of Miller Drive, allegedly swinging a bat at passing vehicles.[8] Because the officers were transporting prisoners, police protocol requires them not to stop, but because there were three of them, they decided to do so anyway. Officer Podlin, who was driving, pulled the Tahoe to the side of the road approximately one hundred yards beyond the intersection. Before doing so, however, the officers called dispatch for backup. Officer Brandt remained at the Tahoe with the prisoners while Officers Podlin and West got out and went to investigate. As they approached Buchanan, Officer Podlin pulled out his Taser and hid it behind his right leg. Officer Stachura arrived at the scene in a marked police cruiser just as Officers Podlin and West made it to the intersection and began conversing with Buchanan. Officer Stachura exited his cruiser and pulled out his weapon as he approached Buchanan and the officers. After Officer Podlin issued several commands to Buchanan to drop the bat, he did. However, when he made a move or gesture toward the bat after having dropped it, both Officer Stachura and Officer Podlin tased him. After being tased, Buchanan picked up the bat, raised it above his head, and started to charge Officer Podlin. At that point, Officer Podlin fired two shots, striking Buchanan in the *821 abdomen. When Officer Podlin fired his taser, Buchanan was approximately fifteen to twenty-one feet away, and when Officer Podlin fired his handgun, Buchanan was approximately nine feet away.
¶ 26. On cross-examination, Officer Podlin explained the incident as follows:
Q. Okay. And according to your testimony today, as you approached him[,] he [Buchanan] began backing up, correct?
A. He—as we approached[,] he went to his bags to pick them up.
Q. And picked them up?
A. Right.
Q. And began backing up?
A. Eventually.
Q. Okay. And you told him to drop the bat, correct?
A. Several times.
Q. Do you remember him responding, [“]why[”]?
A. [“] Why[”] or [“]what for,[”] something to that extent.
Q. Okay. You remember that response. And then according to your testimony today, now having seen the tape, you see that he did, in fact, lay the bat on the ground correct?
A. Yes.
Q. Okay. Now, you have also said that when—after he was tased by you and by [Officer] Stachura almost simultaneously that at that point he still didn’t have the bat in his hands, did he?
A. I know now that he didn’t.
Q. Okay. But you thought at the time you tased him that he did?
A. Yes, sir.
Q. And the next thing you remember after that is firing two shots, correct?
A. Yes.
¶ 27. Detective Craig Peterson, a supervisor in the investigative unit of the Gulfport Police Department, testified for the defense as follows:
Q. Okay. As the case investigator in this particular case, you did, in fact, conduct interviews of [Officer] Pod-lin, [Officer] Stachura and also [Officer] West; is that correct?
A. That’s correct.
Q. And after having reviewed the videos, you, in fact, determined that at the point that Mr. Buchanan had been tased that he did not have a bat in his hand; is that correct?
A. Pm not sure what you’re asking.
Q. Okay. You reviewed the videos in this case?
A. I did.
Q. And you also questioned the officers involved?
A. Yes, I did.
Q. When you reviewed the video did you not determine that Mr. Buchanan did not have any bat in his hand at the time he was tased?
A. That would be accurate, yes.
Q. Okay. And you also questioned the officers, correct?
A. Yes.
Q. All right. Now you questioned Officer West, correct?
A. Yes.
Q. And did Officer West give you a statement as to what occurred?
A. Yes, he did.
Q. Did his statement conflict with the tape?
A. Yes, it did.
*822 Q. You also questioned Officer Podlin, correct?
A. Yes.
Q. Did Officer Podlin give you a statement as to what occurred?
A. Yes, he did.
Q. Did his statement conflict with the tape?
A. Yes, it did.
¶ 28. I now return to a discussion of the issue regarding the instructions that were given. The trial court gave the following jury instructions:
JURY INSTRUCTION S-1A
The Court instructs the Jury that the Defendant, ROBERT LEE BUCHANAN, has been charged in the Indictment with the crime of Aggravated Assault on a Peace Officer.
If you find from the evidence in this case beyond a reasonable doubt that:
(1) On or about July 5, 2007, in the First Judicial District of Harrison County, Mississippi;
(2) the defendant, ROBERT LEE BUCHANAN, did unlawfully, felo-niously!,] and knowingly,
(3) attempt to cause bodily injury to Paul Podlin, with a deadly weapon or other means likely to produce death or serious bodily harm, to-wit: by swinging a baseball bat, a deadly weapon, at the said Paul Podlin,
(4) and not in necessary self-defense,
(5) at the time when Paul Podlin was a law enforcement officer employed by the Gulfport Police Department, and acting within the scope of his duty and office,
then you shall find the defendant, ROBERT LEE BUCHANAN, guilty of Aggravated Assault on a Peace Officer....
JURY INSTRUCTION S-4A
The Court instructs the Jury that if you find that the State has failed to prove all of the essential elements of the crime of Aggravated Assault on a Peace Officer, you may consider the lesser charge of Simple Assault on a Peace Officer. ...
Therefore, if you find the Defendant, ROBERT LEE BUCHANAN, not guilty of Aggravated Assault on a Peace Officer, then you shall proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Simple Assault on a Peace Officer. If you find from the evidence beyond a reasonable doubt that:
(1) On or about July 5, 2007, in the First Judicial District of Harrison County, Mississippi;
(2) The Defendant, ROBERT LEE BUCHANAN, did unlawfully, willfully!,] and feloniously[9] attempt by physical menace to put Paul Podlin in fear of imminent serious bodily injury, to wit: by charging at the said Paul Podlin in a threatening manner,
(3) and not in necessary self-defense
(4) at a time when the said Paul Podlin was a [l]aw [e]nforcement [o]fficer employed by the Gulfport Police Department and acting within the scope of his duty and office, *823 then you shall find the Defendant, ROBERT LEE BUCHANAN, guilty of Simple Assault on a Peace Officer. ...
JURY INSTRUCTION S-5A
The Court instructs the Jury that you find that the State has failed to prove all of the essential elements of the crime of Simple Assault on a Peace Officer, you may consider another lesser charge of Misdemeanor Simple Assault.
Therefore, if you find the Defendant, ROBERT LEE BUCHANAN, not guilty of Simple Assault on a Peace Officer, then you shall proceed with your deliberations to decide whether the State has proved beyond a reasonable doubt all of the elements of the lesser crime of Misdemeanor Simple Assault. If you find from the evidence beyond a reasonable doubt that:
(1) On or about July 5, 2007, in the First Judicial District of Harrison County, Mississippi;
(2) The Defendant, ROBERT LEE BUCHANAN, did knowingly, purposely[>] or recklessly
(3) attempt to cause bodily injury to Paul Podlin
(4) not in necessary self-defense

then you shall find the Defendant, ROBERT LEE BUCHANAN, guilty of Misdemeanor Simple Assault. ...

(Emphasis added).
¶ 29. The majority suggests that since Officers Podlin, West, and Brandt were not wearing their traditional uniforms, Buchanan might not have realized that they were law enforcement officers. While cargo pants and a polo shirt with a cloth patch is not the traditional police uniform, it is, nevertheless, a police uniform. Officer Brandt testified that the cloth patch is in all respects an official police badge. He further testified as follows:
Q. But someone that is not accustomed to seeing you in this outfit wouldn’t necessarily know that you would be a police officer; isn’t that correct?
A. They should know. I mean, it’s clearly marked that it’s a police uniform, yes, sir.
Q. Is it clear to someone that is not from Gulfport that you were police?
A. It should be, yes, sir.
I know of no authority which permits the giving of an instruction based solely on what a defendant may have thought. There is absolutely no evidence that at the time of the incident the officers were acting in any capacity other than as law enforcement officers of the City of Gulfport. Buchanan did not testify; therefore, there is no evidence in the record as to whether he thought that he was dealing with a law enforcement officer or a private citizen. However, at the time of the incident, Officer Podlin was a duly commissioned officer of the Gulfport Police Department, acting within the scope of his employment. Additionally, it would not be reasonable for Buchanan to believe that Officer Podlin, equipped with a taser and a holstered firearm, could have been acting as a private citizen. This is especially true where Officer Stachura, dressed in a regular police uniform, was providing assistance and backup to Officer Podlin. Therefore, it is clear that there is no evidentiary basis to support giving an instruction that would allow the jury to find Buchanan guilty of assaulting Officer Podlin in his capacity as a private citizen.
¶ 30. The majority states: “We find that a reasonable juror could not exclude the evidence on misdemeanor simple assault beyond a reasonable doubt.” Majority opinion at ¶ 11. I find two problems with this statement as a justification for *824 sanctioning the giving of the two simple-assault instructions. First, the majority-fails to identify the evidence that it is referring to. Second, there is no legal difference between simple assault and “misdemeanor simple assault.” “Misdemeanor simple assault” is plain simple assault.
¶ 31. During the events that transpired in this case, Officer Podlin did not act in two capacities: as a peace officer and as a private citizen. Therefore, when the jury found Buchanan not guilty of simple assault on Officer Podlin, it necessarily found him not guilty of “misdemeanor simple assault” on Officer Podlin. It is a red herring to suggest that “misdemeanor simple assault” and simple assault are two separate and distinct lesser offenses of the crime of aggravated assault. Had Buchanan also been charged with aggravated assault on Officer Podlin without the specification that Officer Podlin was a peace officer with the assault occurring while Officer Podlin was acting in his capacity as a peace officer, it would have been proper to grant two simple assault instructions: one for simple assault on Officer Podlin as a peace officer and one for simple assault on Officer Podlin as a private citizen.
¶ 32. “A key consideration in determining whether a crime is a lesser-included offense of a superior crime is whether the indictment put the defendant on sufficient notice of the charges pending again him.” Downs v. State, 962 So.2d 1255, 1260-61 (¶ 23) (Miss.2007) (citing State v. Shaw, 880 So.2d 296, 301 (¶ 16) (Miss.2004)). Based on the language of the indictment, which charged Buchanan with aggravated assault on a peace officer, there is no way that he could have known that he was charged with simple assault on Officer Podlin in Officer Podlin’s capacity as a private citizen.
¶ 33. Simple assault may be committed in three ways: (a) by “attempting] to cause or purposely, knowingly!,] or recklessly causing bodily injury to another”; (b) by “negligently causing] bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm”; and (c) by “attempting] by physical menace to put another in fear of imminent serious bodily harm.” Miss. Code Ann. § 97-3-7 (Supp.2011). It is readily apparent that instructions 4-A and 5-A focus on a separate means of committing simple assault. By giving instruction 4-A, as well as instruction 5-A, the trial court attempted to create two separate crimes of simple assault, with one superior to the other. For sure, the punishment for simple assault on a law enforcement officer is stiffer than the punishment for simple assault on a private citizen, but there is only one crime of simple assault. Calling the crime simple assault when it is committed by attempting by physical menace to put another in fear of imminent serious bodily harm, and then calling it “misdemeanor simple assault” when it is committed by attempting to cause or purposely, knowingly, or recklessly causing bodily injury to another, is both confusing and without foundation in the law. Clearly, the jury thought it was finding Buchanan guilty of an offense less than simple assault, because it found him guilty of “misdemeanor simple assault.”
¶ 34. The majority finds that “[t]he ... difference between the elements of the principal charge of aggravated assault and the two lesser-included offenses is whether the baseball bat can only be considered a deadly weapon.” Majority opinion at ¶ 10. I fail to discern the majority’s reasoning on this point as justification for the granting of the two simple-assault instructions. In the two simple-assault instructions, the jury is not asked to consider whether the baseball bat is a deadly weapon. In in *825 struction 4-A, the jury is asked to determine whether Buchanan attempted by physical menace to put Officer Podlin in fear of imminent serious bodily injury. In instruction 5-A, the jury is simply asked to determine if Buchanan attempted to cause bodily injury to Officer Podlin. In any event, the only evidence is that Buchanan picked up the bat and carried it above his head as he charged Officer Podlin. There is no evidence that the assault occurred any other way. Since the jury found that Buchanan did not commit either aggravated assault or simple assault on Officer Podlin as a peace officer, Buchanan’s conviction for “misdemeanor assault” should be reversed and rendered. For these reasons, I dissent.
CARLTON AND RUSSELL, JJ, JOIN THIS OPINION.

.The jury returned the following verdicts:
We, the jury, find the defendant, Robert Lee Buchanan, not guilty of aggravated assault on a peace/police officer.
We, the jury, find the defendant, Robert Lee Buchanan, not guilty of simple assault on a peace officer.
We, the jury, find the defendant, Robert Lee Buchanan, guilty of misdemeanor assault.

. The indictment charged Buchanan with committing aggravated assault on "Paul Pod-lin ... when the said Paul Podlin, at the time in question, was a law enforcement officer employed by the Gulfport Police Department and acting within the scope of his duty and office....”

. The record contains no evidence of any motorist calling the Gulfport Police Department and complaining about Buchanan's actions.

. I note that this is an improper definition of simple assault when committed with a deadly weapon. The proper definition is "negligently causing bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.” Miss. Code Ann. § 97 — 3—7(l)(b) (Supp.2011). However, no objection to the instruction was lodged on the basis that it was an improper statement of the law.